IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Timothy J. Casner, | ) | No. CIV 03-363-PCT-NVW (HCE) |
| Petitioner, | ) ) | **REPORT & RECOMMENDATION** |
| vs. | ) ) | |
| William Gaspar; et al., | ) ) | |
| Respondents. | ) ) ) | |

Pending before the Court is Petitioner's *pro se* Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 and Respondents' Motion to Dismiss.  For the following reasons, the Magistrate Judge recommends that the District Court deny: (1) Petitioner's Petition; and (2) Respondents' Motion to Dismiss as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Petitioner's Federal Proceedings

On February 24, 2003, Petitioner filed the instant Petition. Respondents initially argued that the Petition should be dismissed as filed untimely under the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter AEDPA). On December 24, 2003, Magistrate Judge Nancy F. Fiora issued a Report and Recommendation finding that the Petition was filed timely and recommending that the District Court deny Respondents' request for dismissal. On April 19, 2004, the District Court[1] accepted the Magistrate Judge's Report and

---

[1] This matter was originally assigned to the Honorable Susan R. Bolton, who subsequently reassigned the case to the Honorable David G. Campbell. On June 1, 2004, the matter was reassigned to the Honorable Neil V. Wake.

Recommendation and denied Respondents' request for dismissal of the Petition. The District Court also ordered Respondents to file an amended answer.

On June 15, 2004, Respondents filed their Amended Answer and accompanying exhibits. On June 28, 2004, Petitioner filed his Traverse.

On June 10, 2005, the undersigned Magistrate Judge[2] ordered Respondents to file: (1) the transcript of the parties' closing arguments; and (2) the pretrial and trial transcripts of testimony, copies of exhibits, and any other argument presented in addition to closing regarding the significant amount of pawn activity engaged in by Petitioner. (June 10, 2005 Order) Respondents complied with the Court's Order by filing additional documents and by indicating that the closing arguments were never transcribed.[3]

On July 26, 2005, Respondents also filed a Motion to Dismiss. On September 28, 2005 Petitioner filed his Response to Respondents' Motion to Dismiss.

Accordingly, the Petition and Respondents' Motion are fully briefed.

II.  Petitioner's State Proceedings Underlying the Instant Petition

  A.  Petitioner's Conviction and Summary of the Case

Petitioner was convicted by a jury in Yavapai County Superior Court of seven counts of residential burglary and one count of theft. (Petition, p.1) The court sentenced Petitioner to a total of 26 years. (Id.)

---

[2]On March 25, 2005, Magistrate Judge Fiora retired. On July 9, 2005, this matter was formally referred to the undersigned Magistrate Judge for all further proceedings in light of Magistrate Judge Fiora's retirement.

[3]In response to Respondents' July 26, 2005 Response to the Court's Order requiring additional information, Petitioner argued, *inter alia,* that the closing argument had been transcribed. (*See* Petitioner's August 5, 2005 "Motion to clarify and add some of the requested documents respondents failed to disclose on July 26, 2005 to this Court"; October 11, 2005 Order denying Petitioner's Motion) On August 24, 2005, Respondents confirmed that although Petitioner had requested the state court to order the transcription, that request was denied and the closing arguments were never transcribed. (Respondents' August 24, 2005 Notice, Ex. B)

A brief summary of pertinent portions of the record of pre-trial and trial proceedings follows.

The appellate court decision affirming Petitioner's conviction states, in pertinent part:

> [Petitioner] worked as a painter of mobile homes and manufactured houses in Prescott, Arizona, during a two-year period when a series of burglaries were reported to local police. Each burglary was characterized by surreptitious entry when the occupants were away, followed by the theft of jewelry or other small valuables. An investigation of the burglaries led police to discover that [Petitioner] had painted or performed handy work on each of the burglarized homes, or had some other connection to the victim.
>
> Throughout the investigation, police officers unsuccessfully attempted to gather physical evidence by dusting for fingerprints and recouping stolen items from pawn shops. While no physical evidence was found linking [Petitioner] to the crimes, Detective Cahall, an investigating officer, discovered the connection between [Petitioner] and the victims of the burglaries, and also discovered that [Petitioner] engaged in a significant amount of pawn activity. Cahall interviewed [Petitioner] who denied involvement in the burglaries. [Petitioner] explained the large amount of pawn activity by saying that he enjoyed buying inexpensive jewelry at swap meets and selling it for profit at pawn shops when the items turned out to be valuable.

(Amended Answer, Ex. N, pp. 2-3)

Through her investigation, Detective Cahall met Petitioner's uncle, Gary Lewis. (Id. at p. 3) Mr. Lewis was facing unrelated drug charges. (Id.) As part of a plea bargain in the unrelated drug case, Mr. Lewis agreed to wear an audio body wire and to attempt to elicit incriminating statements from Petitioner regarding the burglaries as follows:

> While wearing the wire, Lewis discussed the investigation with [Petitioner], and [Petitioner] responded by making vaguely incriminating remarks. Specifically, [Petitioner] made such comments as "if they had shit I would have been arrested a long time ago," "they don't have anything, everything I sold is gone, melted down," and "the next time I steal anything Gary, it's going to be worth it." In addition, [Petitioner] instructed Lewis on what statements he should make to police to correspond with [Petitioner's] own statements. [Petitioner] also commented extensively about "getting rid of shit," and the lack of physical evidence against him regarding the burglaries.

(Id.)

On October 16, 1997, Petitioner was indicted on three counts of theft, twelve counts of residential burglary, one count of attempted residential burglary, and one count of non-residential burglary. (Amended Answer, p. 2 & Ex. A) Subsequently, on January 8, 1998, Petitioner was additionally indicted on one count of theft and three counts of residential burglary. (Amended Answer, p. 2 & Ex. B) Upon the State's motion, and without objection

by Petitioner, the two indictments were consolidated pursuant to Rule 13.3 of the Arizona Rules of Criminal Procedure as a common scheme or plan. (Amended Answer, p. 2 & Ex. C, D) Petitioner subsequently moved to sever the counts and the trial court granted the motion as to all but one count of theft, ten counts of residential burglary, and one count of attempted residential burglary. (Amended Answer, p. 2 & Ex. E, F, G, H)

At trial on the consolidated charges, the prosecution introduced evidence demonstrating that

> someone had entered the homes of people for whom [Petitioner] had done painting or other handy work, or with whom [Petitioner] was otherwise connected. Each victim testified that they hired [Petitioner] to work in the home, [Petitioner] came to the home to give an estimate, [Petitioner] then did the work, and the homes were later burglarized.

(Amended Answer, Ex. N, p.4)

Some of the witnesses testified that they had discussions with Petitioner about whether the house was armed with an alarm system or when the occupants would be out of town. (Id.) In some instances, Petitioner befriended the occupants' dog. (Id.) In each case, small items, such as jewelry, coins, a painting, a gun, a safe and a hand-held recorder were stolen. (Id.) No large items such as televisions, VCRs or stereos were stolen. (Id.)

The prosecution also admitted portions of the surreptitiously recorded conversations between Petitioner and his uncle, Mr. Lewis. (Id. at p.5) Mr. Lewis also testified that he was aware that Petitioner was burglarizing homes. (Id.) The state appellate court stated that "[t]here was further evidence demonstrating that [Petitioner] enjoyed treasure hunting, frequenting swap meets to seek bargains on valuable jewelry, and that [Petitioner] was a 'jewel hound.'" (Id.)[4]

The prosecution did not present physical evidence connecting Petitioner to the thefts. (Id.) No fingerprints were discovered nor were the stolen items recovered. (Id.)

---

[4]The appellate court did not cite a source for the "jewel hound" description.

In his defense, Petitioner asserted his innocence; claimed the burglaries were mere coincidence; pointed to the lack of physical evidence against him; claimed that one of the burglaries was physically impossible for him to perform because he could not fit through the window through which entry had allegedly been made; attacked Mr. Lewis' credibility; and claimed the statements Mr. Lewis recorded were about matters unrelated to the burglaries at issue and that they were joking around. (Id. at pp. 5-6)

At the end of the prosecution's case, the trial court granted a directed verdict with regard to one of the residential burglary counts. (Id. at p.6) At the end of the trial, the jury found Petitioner not guilty of two of the residential burglary counts and the one count of attempted residential burglary. (Id. at p.6; Amended Answer, Ex. I) The jury found Petitioner guilty of seven counts of residential burglary and of theft. (Id.)

Petitioner absconded before the jury returned its verdicts. (Amended Answer, Ex. N, p.6) He was apprehended approximately one year later. (Id.) He then requested to represent himself at sentencing, which the state court permitted. (Id.)

### B. Direct Appeal and Post-Conviction Proceedings

On direct appeal, Petitioner's counsel filed an *Anders* brief stating that he was unable to find any arguable questions of law. (Answer, p. 2 & Ex. L) Petitioner filed a *pro se* supplemental brief raising the following claims:

1.  he was unduly prejudiced by the joinder of the counts against him pursuant to Ariz.R.Crim.P. 13.3;

2.  the grand jury improperly found probable cause;

3.  the prosecutor engaged in prosecutorial misconduct;

4.  the trial judge and the jurors engaged in misconduct;

5.  the trail court erred in allowing Detective Cahall to remain in the courtroom as the state's investigating officer once the rule excluding witnesses had been invoked;

6.  the trial court erred by denying his request for a *Willits* instruction;

    7.      the trial court erred by admitting audio recordings of Petitioner and his uncle;

    8.      the verdicts were not supported by substantial evidence.

(Amended Answer, pp. 2-3 & Ex. M) Petitioner also argued that "a substantial right to a fair trail [sic], under both the State and Federal rules and statues [sic], was denied him...violating his constitutional (Due process, 14 Amendment) rights." (Amended Answer, Ex. M, p. 37)

The Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (Amended Answer, Ex. N)  Petitioner filed a petition for review of the appellate court's decision in which he raised the same eight claims he raised on appeal in addition to other claims not at issue in his instant Habeas Petition. (Amended Answer, Ex. O) The Arizona Supreme Court denied Petitioners' petition for review.  (Amended Answer, p.3 & Ex. P)

Petitioner next filed a post-conviction relief petition (hereinafter PCRP) in which he raised the following claims:

    1.      the verdicts were not supported by sufficient evidence and he was not guilty;

    2.      his convictions and sentences violated the U.S. and Arizona Constitutions;

    3.      ineffective assistance of counsel; and

    4       his rights under the U.S. and Arizona Constitutions were violated because he did not have access to a law library in prison and because he was not appointed an attorney[5] both of which interfered with his right to access to the Court during the post-conviction proceeding.

(Amended Answer, p. 4 & Ex. R)

The trial court denied relief and  Petitioner did not seek review of the trial court's decision. (Amended Answer, p. 4 & Ex. T; Petition, p. 2)

---

[5]Petitioner indicated in his Notice of Post-Conviction Relief that he did not "request the court to appoint a lawyer for this proceeding."  (Amended Answer, Ex. Q, p.2)

## DISCUSSION

### I.  Respondents' Motion to Dismiss

On July 26, 2005 Respondents moved to dismiss the Petition because Petitioner then had a successive Post-Conviction Relief Petition pending in state court.

On August 26, 2005, the Court issued an order advising Petitioner that his Response to Respondents' Motion should address whether a stay of this action was appropriate in light of *Rhines v. Weber*, 544 U.S. 269 (2005) and given the statute of limitation provisions under the AEDPA.  (August 26, 2005 Order)   Further, Petitioner was also advised that he may choose to abandon his unexhausted claims by amending  his habeas petition to present only exhausted claims to this Court.   (Id.)

Petitioner responds that he has "voluntarily withdrawn" his successive Post-Conviction Relief Petition.  (Petitioner's Response to Motion to Dismiss, p.1 & Ex. A) He therefore requests that the Court deny Respondents' Motion as moot.

Petitioner is correct that Respondents' Motion to Dismiss is now moot in light of Petitioner's "Notice of Defendant's Voluntary Withdraw [sic] of Petition for Post Conviction Relief" filed with the state court.  As such, Respondents' Motion should be denied.

### II.  Petitioner's Petition for Writ of Habeas Corpus

Petitioner's instant Petition raises the following issues:

1.  the trial court's partial denial of his motion to sever violated his right to due process and a fair trial;

2.  the verdicts were not supported by sufficient evidence resulting in violation of Petitioner's right to due process and a fair trial;

3.  prosecutorial misconduct;

4.  the juror's disregarded jury instructions resulting in violation of Petitioner's right to due process and a fair trial; and

5.  the trial court's admission of tape-recordings of Petitioner and his uncle violated Petitioner's right to due process and a fair trial.

Respondents argue that Petitioner is procedurally barred from presenting some portions of his claims and that the claims subject to this Court's review should be denied on their merits.

### A. Standard: Exhaustion and Procedural Default

A federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state court remedies available to him. 28 U.S.C. § 2254(b); *Baldwin v. Reese,* 541 U.S. 27(2004); *Castille v. Peoples,* 489 U.S. 346 (1989). The exhaustion inquiry focuses on the availability of state court remedies at the time the petition for writ of habeas corpus is filed in federal court. *See O'Sullivan v. Boerckel,* 526 U.S. 838 (1999). Exhaustion generally requires that a prisoner give the state courts an opportunity to act on his claims before he presents those claims to a federal court. *Id.* A petitioner has not exhausted a claim for relief so long as the petitioner has a right under state law to raise the claim by available procedure. *See* Id.; 28 U.S.C. § 2254(c).

A habeas petitioner may exhaust his claims in one of two ways. First, a claim is exhausted when no remedy remains available to the petitioner in state court. *See* 28 U.S.C. § 2254(b)(1)(A). Second, a claim is exhausted if there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the petitioner. *See* 28 U.S.C. § 2254(b)(1)(B).

To meet the exhaustion requirement, the petitioner must have "fairly present[ed] his claim in each appropriate state court...thereby alerting that court to the federal nature of the claim." *Baldwin,* 541 U.S. at 30; *see also Duncan v. Henry,* 513 U.S. 364, 365-66 (1995). A petitioner fairly presents a claim to the state court by describing the factual or legal bases for that claim and by alerting the state court "to the fact that the...[petitioner is] asserting claims under the United States Constitution." *Duncan,* 513 U.S. at 365-366; *Tamalini v. Stewart,* 249 F.3d 895, 898 (9th Cir. 2001). Mere similarity between a claim raised in state court and a claim in a federal habeas petition is insufficient. *Duncan,* 513 U.S. at 365-366.

Furthermore, to fairly present a claim, the petitioner "must give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845. Once a federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied. *See Picard v. Connor,* 404 U.S. 270, 275 (1971). In habeas petitions, other than those concerning life sentences or capital cases, the claims of Arizona state prisoners are exhausted if they have been fairly presented to the Arizona Court of Appeals either on appeal of conviction or through a collateral proceeding pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. *Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999).

In some instances a claim can be technically exhausted even though the state court did not address the merits. This situation is referred to as "procedural bar" or "procedural default." A claim is procedurally defaulted if the state court declined to address the issue on the merits for procedural reasons. *Franklin v. Johnson,* 290 F.3d 1223, 1230 (9th Cir. 2002). Procedural default also occurs if the claim was not presented to the state court and it is clear the state would now refuse to address the merits of the claim for procedural reasons. *Id.* The procedural bar provides an independent and adequate state-law ground for the conviction and sentence and, thus, prevents federal habeas corpus review unless the petitioner can demonstrate cause and prejudice for failing to raise the claim in the state proceedings. *Gray v. Netherland,* 518 U.S. 152, 161-162 (1996); *see also Murray v. Carrier,* 477 U.S. 478, 485-495 (1986); *Franklin,* 290 F.3d at 1231. Accordingly, the procedural default doctrine prevents state prisoners from obtaining federal review by allowing the time to run on available state remedies and then rushing to federal court seeking review. *Coleman v. Thompson,* 501 U.S. 722, 731-732 (1991).

If a claim has never been presented to the state court, a federal habeas court may determine whether state remedies remain available. *See Harris v. Reed,* 489 U.S. 255, 269-270 (1989); *Franklin,* 290 F.3d at 1231. In Arizona, such a determination often involves consideration of Rule 32 *et seq.* of the Arizona Rules of Criminal Procedure governing post-conviction relief proceedings. For example, Ariz.R.Crim.P. 32.1 specifies when a petitioner

may seek relief in post-conviction proceedings based on federal constitutional challenges to convictions or sentences. Under Rule 32.2, relief is barred on any claim which could have been raised in a prior Rule 32 petition for post-conviction relief, with the exception of certain claims[6] which were justifiably omitted from a prior petition. Ariz.R.Crim.P. 32.2.

In summary, failure to exhaust and procedural default are different concepts. *Franklin*, 290 F.3d at 1230. Under both doctrines, the federal court may be required to refuse to hear a habeas claim. *Id.* The difference between the two is that when a petitioner fails to exhaust, he may still be able to return to state court to present his claims there. *Id.* In contrast, "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot show cause and prejudice for the default, however, the district court dismisses the petition because the petitioner has no further recourse in state court." *Id.* at 1231.

The Petitioner herein has satisfied the exhaustion requirement to the extent that he has fairly presented federal constitutional claims in his direct appeal that are also raised in the instant Petition. To the extent Petitioner has failed to exhaust claims presented in the instant habeas petition, *see* discussion *infra* at sections II.C.3, II.C.4, II.C.5.

The record also reflects that Petitioner has failed to exhaust claims raised in his PCRP because he did not seek review of the trial court's denial of that Petition. *See O'Sullivan*, 526 U.S. at 845. (petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process.") However, whether Petitioner has procedurally defaulted these claims is of

---

[6]Such claims include: (1) that the petitioner is being held in custody after his sentence has expired; (2) certain circumstances where newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence; (3) the petitioner's failure to file a timely notice of post-conviction relief was without fault on his part; (4) there has been a significant change in the law that would probably overturn petitioner's conviction if applied to his case; and (5) the petitioner demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found petitioner guilty beyond a reasonable doubt. Ariz.R.Crim.P. 32.2(b) (citing Ariz.R.Crim.P. 32.1(d)-(h)).

no moment because none of the issues raised in Petitioner's PCRP are alleged in the instant Petition.

    B.  Standard: Review of Merits

    Pursuant to the provisions of the AEDPA, the Court may grant a writ of habeas corpus only if the state court proceeding:

    (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett,* 393 F.3d 943, 978 (9th Cir. 2004), *cert. denied* __ U.S. __, 126 S.Ct. 484 (2005).  Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins,* __ U.S. __, 126 S.Ct. 969 (2006).

    Section 2254(d)(1) consists of two alternative tests, i.e., the "contrary to" test and the "unreasonable application" test. *See Cordova v. Baca,* 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy,* 331 F.3d 1062, 1067 (9th Cir. 2003) (citing *Williams v. Taylor,* 529 U.S. 362, 413-414 (2000)).  Additionally, a state court's decision is "'contrary to' Supreme Court case law if the state court 'applies a rule that contradicts the governing law set forth in' Supreme Court cases."[7] *Lynn v. Farmon,* 347 F.3d

_____

    [7]"[T]he *only* definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams,* 529 U.S. at 412...While circuit law may be "persuasive authority" for

- 11 -

735, 738 (9th Cir. 2003) *cert. denied* 541 U.S. 1037 (2004) (quoting *Early v. Packer,* 537 U.S. 3, 8 (2002)). "Whether a state court's interpretation of federal law is *contrary* to Supreme Court authority...is a question of federal law as to which [the federal courts]...owe no deference to the state courts." *Cordova,* 346 F.3d at 929 (emphasis in original) (distinguishing deference owed under the "contrary to" test of section (d)(1) with that owed under the "unreasonable application" test).

Under the second test, " '[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle...but unreasonably applies that principle to the facts of the prisoner's case.'" *Lynn,* 347 F.3d at 738 (quoting *Clark,* 331 F.3d at 1067) Under the "'unreasonable application clause...a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...[r]ather that application must be objectively unreasonable.'" *Clark,* 331 F.3d at 1068 (quoting *Lockyer v. Andrade,* 538 U.S. 63 (2003)). When evaluating whether the state decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law." *Cordova,* 346 F.3d at 929.

Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert,* 393 F.3d at 978; *see also Taylor v. Maddox,* 366 F.3d 992, 999 (9th Cir.), *cert. denied* 534 U.S. 1038 (2004) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court

---

purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, *Duhaime v. Ducharme,* 200 F.3d 597, 600-01 (9th Cir.1999), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark,* 331 F.3d at 1069 (emphasis in original).

was not merely wrong, but actually unreasonable.") Section (d)(2) "applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence,...that the process employed by the state court is defective,...or that no finding was made by the state court at all." *Taylor,* 366 F.3d at 999 (citations omitted). In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues.'... [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert,* 393 F.3d at 972 (*quoting Taylor,* 366 F.3d at 1000) (emphasis in original). Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness [pursuant to 28 U.S.C. section 2254(e)[8]], which then helps steel them against any challenge based on extrinsic evidence, i.e., evidence presented for the first time in federal court." *Taylor,* 366 F.2d at 1000.

Both section 2254(d)(1) and (d)(2) may apply where the petitioner raises issues of mixed questions of law and fact. Such questions "receive similarly mixed review; the state court's ultimate conclusion is reviewed under [section] 2254(d)(1), but its underlying factual findings supporting that conclusion are clothed with all of the deferential protection ordinarily afforded under [sections] 2254(d)(2) and (e)(1)." *Lambert,* 393 F.3d at 978.

---

[8]Under section 2254(e) "a determination of a facutal issue made by a State court shall be presumed to be correct." "State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error....Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once" it is found that the state court did not unreasonably determine the facts in light of the evidence presented in the state proceeding. *Taylor,* 966 F.3d at 1000.

## C. Review of Petitioner's Claims

### 1. Claim One: The trial court's partial denial of Petitioner's Motion to Sever

Petitioner argues that the joinder of claims denied him his constitutional right to a fair trial.

Petitioner was charged by way of two indictments: one contained seventeen counts and the other set out four counts.   Upon the prosecution's motion, and without objection by Petitioner, the trial court consolidated the two indictments pursuant to Rule 13.3 of the Arizona Rules of Criminal Procedure as a common scheme or plan.  (Amended Answer, p. 2 & Ex. C, D) Petitioner subsequently moved to sever the counts and the trial court granted the motion as to all but one count of theft, ten counts of residential burglary, and one count of attempted residential burglary.  (Amended Answer, p. 2 & Ex. E, F, G, H)

Offenses may be joined pursuant to Arizona statute where:  (1) they are of the same or similar character; (2) they are based on the same conduct or are otherwise connected together in their commission; or (3) they are alleged to have been part of a common scheme or plan. Ariz.R.Crim.P. 13.3 "The defendant shall be entitled as of right to sever offenses joined only by virtue of" being the same or similar in character.  Ariz.R.Crim.P. 13.4(b).  However, severance pursuant to Rule 13.4(b) is not required if evidence of the offenses would be admissible in a trial on any one of the offenses as other act evidence pursuant to Rule 404(b) of the Rules of Evidence. *Id.*

In seeking joinder, the prosecution presented its theory that Petitioner used his house painting business to:  identify property which could be stolen; assess means of entry and the security system, if any, used by the occupants; befriend dogs owned by the occupants; and to learn when the occupants would be away from their homes. (Amended Answer, Ex. F, H) The prosecution further pointed out that the majority of the burglaries involved the theft of small items such as jewelry; none of the burglaries involved the theft of electronic items such as televisions and VCRs; and many of the burglaries involved a similar point of entry, i.e., a window or screen door.  (Id.)

- 14 -

The trial court focused its determination on twelve counts comprised of ten residential burglaries, one attempted residential burglary, and the portion of the "'supertheft' count" related to same. (Amended Answer, Ex. H). The court permitted joinder of two counts as part of a common scheme or plan and joinder of the remaining counts pursuant to Ariz.R.Evid. 404(b) because the evidence of other acts was probative to determination of the burglar's identity. (Id.)

The appellate court affirmed as follows:

> The point of permitting same or similar crimes to be tried together so long as they meet a Rule 404(b) test of admissibility is to increase the probative value of each crime with regard to the other crimes. While this practice is admittedly prejudicial to a defendant, it is not unfairly so because this result is what the joinder rules contemplate. In other words, it is the similar nature of the repetitive crimes that is probative of the fact that the defendant committed each. Accepting defendant's argument that joinder of the numerous similar act counts against him is impermissible because it is too prejudicial would have the anomalous effect of decreasing the state's chance of convicting a defendant with every additional 'similar' crime he commits. That is, a defendant who commits only two similar offenses would have them tried together while a defendant who committed ten would be entitled to separate trials on each. We reject defendant's illogical argument and find there was no error in the joinder of the counts in this case.

(Amended Answer, Ex. N, p.9)

The United States Supreme Court has recognized that "[i]mproper joinder does not, in and of itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane,* 474 U.S. 438 n.8 (1986). Indeed, the federal court "may grant habeas relief on a joinder challenge only 'if the joinder resulted in an unfair trial. There is no prejudicial constitutional violation unless 'simultaneous trial of more than one offense...actually rendere[ed] petitioner's state trial fundamentally unfair and hence, violative of due process." *Davis v. Woodford,* 384 F.3d 628, 638 (9th Cir. 2004) (*quoting Sandoval v. Calderon,* 241 F.3d 765, 771-772 (9th Cir. 2001)); *see also Fields v. Woodford,* 309 F.3d 1095, 1110, *amended* 315 F.3d 1062 (9th Cir. 2002) (same).

Considerations in evaluating whether a habeas petitioner has demonstrated prejudice arising from joinder include the "cross-admissibility of evidence and the danger of 'spillover'

from one charge to another, especially where one charge or set of charges is weaker than another." *Davis,* 384 F.3d at 638.   "The requisite level of prejudice is reached only 'if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (*citing Sandoval,* 241 F.3d at 772)   The petitioner bears the burden of proving unfairness rising to the level of a due process violation. *Park v. California,* 202 F.3d 1146, 1149 (9th Cir. 2000).

Petitioner argues that the danger of "spillover" from one charge to another rendered joinder in his case constitutionally prejudicial.   Petitioner cites a newspaper article quoting one of the jurors in his case as follows:

> It was difficult because we didn't have any evidence as far as having anything in hand....A lot of it was due to the pattern that was picked up. Maybe once or twice, that could have been a coincidence, but not that many.

(Amended Answer, Ex. M, attachment 2) Although the trial judge permitted joinder based on the conclusion that the counts related to properties to which Petitioner gained access through his activities as a house painter and not by virtue of a personal relationship with the occupants, Petitioner argues that he did have a personal relationship with some of the victims in the joined counts. (Amended Answer, Ex. H & Traverse Ex. A) He also argues that other facts were inconsistent with the prosecution's theory supporting joinder.  (Traverse, p.4)

The Ninth Circuit has recognized that "the failure of the jury to convict on all counts is the best evidence of the jury's ability to compartmentalize the evidence." *Park,* 202 F.3d at 1150 (citations omitted).  Here, the jury did not convict Petitioner on three of the eleven  counts that were submitted to them.[9]  (Amended Answer, Ex. I)  That fact is "strong evidence that [Petitioner] was not prejudiced by the" joinder.  *Id.*

The prosecution herein "did not join 'a strong evidentiary case with a much weaker case in hope that the cumulation of the evidence would lead to convictions in both cases.'" *Davis,*

---

[9]Of the twelve counts joined, one was dismissed on directed verdict; therefore, only eleven counts were submitted to the jury.

- 16 -

384 F.3d at 639 (*quoting Sandoval,* 241 F.3d at 772) (no prejudice where joined count involved primarily circumstantial evidence). The joined counts in the instant case were essentially equal given that the prosecution had no physical evidence linking Petitioner to the crimes. *See Park,* 202 F.2d at 1150 (denying habeas relief where "the evidence supporting the convictions for the separate crimes was [not] that unequal.") Additionally, the record supports the conclusion that the evidence would have been admissible to establish identity under Rule 404(b) in a separate trial on the other counts given the burglar's signature as suggested by the record.[10] *See Davis,* 384 F.3d at 639 (joinder was not prejudicial where evidence was cross-admissible); *Sandoval,* 241 F.3d at 772 (citing Rule 404(b) to support finding of cross-admissibility); *Fields,* 309 F.3d at 1110, *amended* 315 F.3d 1062 (evidence was cross-admissible because the crimes were sufficiently similar to reflect a common modus operandi, and to show motive and intent). Moreover, "prejudice generally does not arise from joinder when the evidence of each crime is simple and distinct even in the absence of cross-admissibility." *Bean v. Calderon,* 163 F.3d 1073, 1085 (9th Cir. 1998). Given that each offense essentially involved different victims and locations, the evidence about each offense was therefore distinct. Nor is there any suggestion in the record that the evidence regarding each offense was complex.

Accordingly, for the foregoing reasons, the Arizona Court of Appeals' decision affirming the trial court's denial in part of Petitioner's severance motion was not contrary to, or an unreasonable application of, clearly established federal law. Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented.

---

[10]Even assuming Petitioner is correct that discrepancies existed between the evidence presented at trial and the prosecution's theory presented at the severance hearing, "the trial judge had no way of knowing at the time of the pre-trial severance motion that the evidence would eventually show" something different, if indeed it did. *Sandoval,* 241 F.3d at 773 (denying habeas relief where, among other things, the evidence presented at trial indicated that one count was stronger than the others).

    2. Claim Two: Insufficient evidence

Petitioner seeks habeas relief alleging his convictions were not supported by sufficient evidence. Petitioner claims there was insufficient evidence to support his convictions because: (1) he testified as to his innocence; (2) he challenged Mr. Lewis' credibility; (3) he testified that he was joking around with Mr. Lewis when he made incriminating statements that were surreptitiously taped; and (4) there was no physical evidence connecting him to any of the crimes. Petitioner also specifically addresses why there was insufficient evidence to support a guilty verdict with respect to each burglary. Additionally, he argues that there was no evidence supporting the jury's verdict on the theft count.

The Arizona Court of Appeals rejected Petitioner's argument as follows:

> Defendant also raises a variety of miscellaneous issues arguing that the investigation against him was skewed because investigating officers rushed to judgment against him. Defendant argues that the subsequent jury verdict was rendered in the same manner. These arguments primarily address the sufficiency of the evidence, which we find to be overwhelmingly in support of the verdicts.

(Amended Answer, Ex. N, pp. 16-17) (footnote omitted)

Under the Due Process Clause, a conviction must be based upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which the accused is charged. *Juan H. v. Allen,* 408 F.3d 1262, 1274 (9th Cir. 2005), as amended, *cert. den.,* __U.S.__, 2006 WL 88994 (January 17, 2006), *(citing In re Winship,* 397 U.S. 358 (1970)). A habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Id.* The United States Supreme Court has held that when evaluating a claim of insufficiency of evidence, "the relevant inquiry 'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original) (*quoting Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *United States v. Lewis,* 787 F.2d 1318, 1324, *amended* 798 F.2d 1250 (9th Cir. 1986).

- 18 -

In light of enactment of the AEDPA, the federal court must "apply the standards of *Jackson* with an additional layer of deference." *Allen,* 408 F.3d at 1274 (citing 28 U.S.C. §2254(d)). The federal court must also be "mindful of 'the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review.'" *Id.* at 1275 (*quoting Wright v. West,* 505 U.S. 277, 296-97 (1992) (plurality opinion)).

The instant analysis necessarily requires consideration of the elements of the criminal offense charged in light of the evidence presented and all reasonable inferences that may be drawn therefrom. *Id.* (*citing Jackson,* 443 U.S. at 319, 324 n.16) The elements of residential burglary under Arizona law are: (1) entering or remaining unlawfully in or on a residential structure; (2) with the intent to commit a theft or a felony therein. Ariz. Rev. Stat. §13-1507. In the context of the charges against Petitioner, theft occurs when a person, without lawful authority, knowingly controls or converts property of another with the intent to deprive the other person of that property. Ariz. Rev. Stat. §13-1802(A)(1),(2).

In affirming Petitioner's convictions, the appellate court discussed evidence that: there was a connection between Petitioner and the homes that were burglarized; Petitioner's uncle, Mr. Lewis, knew Petitioner had burglarized homes; Petitioner made "vaguely incriminating remarks" to his uncle and such statements were surreptitiously taped; only small valuables, mostly jewelry, were stolen; and Petitioner engaged in a significant amount of pawn shop activity. (Amended Answer, Ex. N) The record reflects that the prosecution also introduced evidence that Petitioner frequented jewelry shops to inquire about the value of various pieces of jewelry and to offer items for sale. (Respondents' Exhibits in Response to Court Order of June 15, 2005, Ex. B,C)

The prosecution had no physical evidence directly tying Petitioner to the thefts. That does not in and of itself support Petitioner's claims. Circumstantial evidence, such as that presented here, "and inferences drawn from it may be sufficient to sustain a conviction." *Lewis,* 787 F.2d at 1324 *amended* 798 F.2d 1250; *see also United States v. Talbert,* 710 F.2d 528, 530 (9th Cir. 1983) ("Circumstantial evidence is sufficient to sustain a conviction....")

Petitioner presented evidence during the trial to undermine the prosecution's case, but to be sufficient "the government's evidence need not exclude every reasonably hypothesis consistent with innocence." *Talbert,* 710 F.2d at 530.

On the instant record, when viewing the evidence and related inferences in the light most favorable to the prosecution, the state court's rejection of Petitioner's claim of insufficient evidence was not contrary to, or an unreasonable application of, clearly established federal law because a rationale juror readily could have concluded that Petitioner committed the offenses for which he was convicted. Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented.

### 3. Claim Three:   Prosecutorial misconduct

Petitioner claims that the prosecutor, Ms. Polk, engaged in over 25 instances of misconduct in which she asked "argumentative questions for the jury to hear and in the process...[she] changes the testimony of the victims and the facts of the evidence" in such a way that the questions are not supported by the evidence. (Petition, pp. 7-7A) Petitioner sets forth facts relating to five instances of such conduct as follows:

(1)     To witness Jim Lewis: "Are you aware also that Tim Casner has implicated you as an accomplice in this case?"

(2)     To Petitioner: "You told Jim Lewis to tell Gary [Lewis] he could name his price if he wouldn't testify against you?"

(3)     To Petitioner: "Doesn't it seem odd to you, Mr. Casner, that ten of the homes that you painted or gave estimates on or worked next door to in less than a two-year period were subsequently burglarized?"

(4)     To Petitioner: "Don't you agree that if maybe two of the homes that you (painted) worked on and the home owner later calls Mr. Buckels[11] (former employer) and

---

[11]Elsewhere in the record, Mr. Buckels' name is spelled "Buckles." (*See* Amended Answer, p. 15 quoting November 13, 1998 Transcript at pp.47-49)

says 'your painters were just here and my home has been burglarized,' don't you think Lonnie Buckels would've confronted you about it?"

(5)     To Gary Lewis: "Did Tim ever brag to you about switching stones in jewelry?" (Petition, pp. 7A-7D)[12]

In his Traverse, Petitioner also alleges prosecutorial misconduct arising from the prosecutor's oral argument to the trial judge in response to defense counsel's Rule 20 motion, i.e. the defense's request for a directed verdict at the close of the state's case. (Traverse, p.12)

Petitioner contends that the alleged misconduct "permeat[ed] the entire atmosphere of the court room" so as to render the trial unfair. (Petition, p. 7F)

<u>    a. Exhaustion and Procedural Default</u>

Respondents argue that Petitioner's claim has not been exhausted to the extent that he challenges the prosecutor's questions posed to Jim Lewis and to himself regarding comments he made to Jim Lewis as set out above at instances one and two. Petitioner raised the issue of prosecutorial misconduct on direct appeal. Review of the record reveals that Respondents are correct that Petitioner did not raise instances one and two before the state court. Therefore, Petitioner has not exhausted those claims. *See Kelly v. Small,* 315 F.3d 1063, 1066 (9th Cir.), *cert denied* 538 U.S. 1042 (2003) (to exhaust his claims, "[t]he state prisoner must describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based...."); *Tamalini,* 249 F.3d at 898 ("Because [petitioner] did not describe the operative facts and legal theory upon which [a supposed due process...] claim is based...,he did not fairly present those particular federal claims to the state courts in order to give the State the opportunity to pass upon and correct them.")  Moreover, Petitioner is now barred pursuant to Rule 32.2(a) of the Arizona Rules of Criminal Procedure from returning to state

---

[12]Petitioner's version of the questions appears to be a paraphrase of the record. *See infra.* at pp.23-24.

court.[13]   *See Franklin,* 290 F.3d at 1230-1231 ("the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred.")

Petitioner also fails to show cause or prejudice for the default. Although he states that page limitations prevented him from presenting the relevant facts to the state appellate court, he does not show that external forces prevented him from presenting the facts to the state court. He could have requested permission to extend the page limit. *See Martinez-Villareal v. Lewis,* 80 F.3d 1301, 1305 (9th Cir. 1996) (cause is an external impediment such as government interference).

Petitioner's claim is also precluded to the extent that he presents additional facts in his Traverse regarding the Rule 20 motion. Although Petitioner raised that issue to the state court, he did not set forth the facts in his Petition. Rule 2(c) of the Rules Governing Section 2254 Cases provides that "[t]he petition must...specify all the grounds for relief available to the petitioner [and]...state the facts supporting each ground." *See also Mayle v. Felix,* __ U.S. __, 125 S.Ct. 2562, 2570 (2005) (recognizing that notice pleading is not sufficient because the petition is expected to state facts that point to a real possibility of constitutional error). Indeed, the model form provided to Petitioner advised that he must "[s]ummarize briefly the facts supporting each ground" and the form also prompted Petitioner to provide supporting facts for each ground alleged. (Petition, p.4)

---

[13]Although the Ninth Circuit recently suggested that under Ariz.R.Crim.P. 32.2, there are exceptions to the rule that a district court can decide whether state remedies remain available for claims that require a knowing, voluntary, and intelligent waiver *see Cassett v. Stewart,* 406 F.3d 614 (9th Cir. 2005), *petition for cert filed* 74 U.S.L.W. 3352 (Nov. 1, 2005), this Court need not address such waiver because it has not been affirmatively raised by Petitioner. *See Harris,* 489 U.S. at 269-270; *Beaty v. Stewart,* 303 F.3d 975, 987 & n.5 (9th Cir. 2002), *cert denied,* 538 U.S. 1053 (2003).

Because Petitioner did not include within his Petition the facts to support a claim of prosecutorial misconduct based on the prosecutor's argument on the Rule 20 motion, that claim is not properly before the Court pursuant to Rule 2 of the Rules Governing Section 2254 Cases.

b.  Merits of prosecutorial misconduct instances 3, 4, and 5

The following exchanges occurred at trial in chronological order:

*Q. [by the prosecutor[14]]: Did Tim [Petitioner] ever brag to you about switching stones in jewelry?*

MR. SEARS [Petitioner's trial counsel]: You [sic] Honor, can we go to side bar?

(The following side bar proceedings were held out of the hearing of the jury.)

MR. SEARS: You [sic] honor, I'm going to move for a mistrial.  That is just a shocking direct disregard by the State of the Court's orders regarding matters that are not properly before the jury.  That is 404(B) [sic] material that was never disclosed and the only case that they have charges the defendant with the switching of jewelry of Dick Bussman which was severed.  That's an outrageous remark.

MS. POLK [the prosecutor]: Judge, I totally disagree.  What this witness will testify to is Tim carried a bag of loose stones and—and tools so he could switch things out...at park and swap, in fact he saw him swap rings and the vendor didn't notice he switched a stone.  It goes to his whole method, his obsession with the jewelry.  His thievery has nothing to do with the excluded 404(B) [sic] stuff.

MR. SEARS: How in the world does that prior uncharged bad act not be a 404(B) [sic] bad act?  It is not just a random 404(B) [sic] act.  It's Dick Bussman's story; that's what we're taking about here.  I don't care what she dances around about, but that's what she is getting at.  I renew my motion for mistrial.  That is out of bounds.

THE COURT: The Motion for Mistrial is denied.  The objection is sustained.  It calls for other bad act testimony.  That's out of the scope of this trial.  Anything further?

MS. POLK: No, Sir.

MR. SEARS: I would like counsel for the State to be cautioned not to do anything like this.  As she has been complaining in the past, it put information out in the air where the harm can't be undone by simply sustaining an objection.  I want the State to understand if she intends to try to do this with the witnesses we'll be right back here at side bar.

MS. POLK: Judge, I'm not intentionally doing anything to cause a mistrial.  That doesn't help me at all.  I had no intention of going near Dick Bussman.  This is a completely unrelated event, but I certainly will keep that in mind.

---

[14]The prosecutor was Ms. Polk.

THE COURT: Okay.

(The following proceedings were held in the presence of the jury.)

THE COURT: Ms. Polk?

MS. POLK: Thank you.

MR. SEARS: For the record, was my objection sustained to the last question?

THE COURT: The objection was sustained.

***

Q. [Prosecutor]: In fact, Mr. Casner if while working for any one of those people if one of the homes had been burglarized, Bob Cave, Lonnie Buckles, or Larry Gross probably would have confronted you about it: wouldn't you agree?

A: [Petitioner]: I wouldn't know that.

Q. *Don't you agree that if maybe two of the homes that you worked on and the homeowner later calls Mr. Buckles and says, "Your painters were just here and my home has been burglarized," don't you think Lonnie Buckles would have confronted you about it?*

MR. SEARS: Speculation, relevance; objection.

THE COURT: Sustained.

***

Q. [Prosecutor] *Doesn't it seem a little odd to you, Mr. Casner, that ten homes that you painted over a two-year period were subsequently burglarized?*

MR. SEARS: Object to the form of the question as to the number of homes; misstates the evidence.

THE COURT: The objection is sustained.

(Amended Answer, pp. 15-16 quoting November 13, 1998 Transcript, pp. 47-49 and November 20, 1998 Transcript, pp. 82-83) (emphasis added)

The appellate court noted that the trial court properly sustained the defense's objections. The appellate court found no reversible error caused by the prosecutor's conduct: "it is clear that if it was misconduct, it was not 'so pronounced and persistent that it permeate[d] the entire atmosphere of the trial' so as to warrant reversal." (Amended Answer, Ex. N, pp. 11-12 (citation omitted)) The record also reflects that the trial court instructed the jury "that if the

- 24 -

court sustains an objection to a lawyer's question, you must disregard it and any answer given."
(Petition, p.8B; *see also* Amended Answer, Ex. N, p.14)

"To warrant habeas relief, prosecutorial misconduct must 'so infect[] the trial with
unfairness as to make the resulting conviction a denial of due process." *Davis,* 384 F.3d at 644
(*quoting Darden v. Wainwright,* 477 U.S. 168, 181 (1986)); *see also Greer v. Miller,* 483 U.S.
756, 765 (1987) ("To constitute a due process violation, the prosecutorial misconduct must be
of sufficient significance to result in the denial of the defendant's right to a fair trial.") Where
the trial court has instructed the jury to disregard questions to which objections were sustained,
it is presumed that the jury has followed the instruction and that no due process violation has
occurred. *Greer,* 483 U.S. at 766 n.8; *see also United States v. Sarkisian,* 197 F.3d 966, 988
(9th Cir. 1999) (no prosecutorial misconduct shown where the trial court sustained the objection
and gave curative instruction); *Sassounian v. Roe,* 230 F.3d 1097, 1106-1107 (9th Cir. 2000)
(habeas petitioner failed to establish prosecutorial misconduct where "[t]he trial
judge...correctly sustained several objections to the alleged misconduct.") This presumption
may be overcome if there is an "overwhelming probability that the jury will be unable to follow
the court's instructions...and a strong likelihood that the effect of the evidence will be
devastating to the defendant." *Greer,* 483 U.S. at 766 n.8 (citations omitted).

The record reflects that as soon as the prosecution asked the offending questions the defense
attorney objected and, therefore, the jury did not hear the answers that would have been
inadmissible. In addition to sustaining the objections, the court subsequently instructed the
jury to disregard the question and any answer given in response. *See Sarkisian,* 197 F.3d at
988; *Sassounian,* 230 F.3d at 1106-1107.   Given the evidence presented by the prosecution
during the trial and the fact that the jury did not find Petitioner guilty of all counts, there is a
not a strong likelihood that the effect of the questions asked would have been devastating to
Petitioner.

Petitioner's request for relief on this ground should be denied because the state appellate
court's decision was not contrary to, or an unreasonable application of, clearly established

- 25 -

federal law.  Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented.

### 4.  Claim Four: Juror misconduct

Petitioner claims that the jurors engaged in misconduct by not following the instructions given to them by the trial court.  Specifically, Petitioner argues that the jurors disregarded the following instructions: (1) that the state must prove each element beyond a reasonable doubt; (2) that the jurors must disregard the question and any answer given if an objection was sustained; and (3) that if the jurors found Petitioner guilty of theft, they must then determine the fair market value of the property at the time of the theft. (Petition, pp. 8A-8C)

On direct appeal of his convictions, Petitioner specifically raised only the claim that the jurors disregarded the instruction regarding sustained objections. (*See* Amended Answer, Ex. M, p.30) The Arizona Court of Appeals found no error as follows:

> Defendant also argues that the jurors ignored the jury instructions and instances where objections were sustained, as evidenced by a juror's asking a question of a witness regarding a topic upon which that witness' testimony was stricken.  The jury was properly instructed to disregard statements that were stricken, and the improper juror question was not asked of the witness.  We find no error.

(Amended Answer, Ex. N, p.14)

### a. Exhaustion and Procedural Default

Respondents argue that Petitioner's Claim Four is exhausted only to the extent that he challenges the instruction regarding sustained objections.

Petitioner asserts that he exhausted all three issues raised herein because his brief before the appellate court referred to the jury "instructions" in the plural form when he argued that the jurors failed to follow their instructions. (Traverse, p.13) He stated on appeal that  there were "far to [sic] many" examples of misconduct to list them all and he requested the court "to review the action as it applies to the law and issue." (Id.)

Petitioner's failure to apprise the state court of the operative facts supporting his claim of juror misconduct renders his claim unexhausted except for the issue of the instruction

regarding sustained objections.[15] *See Kelly,* 315 F.3d at 1066; *Tamalini,* 249 F.3d at 898. Nor does the *Anders* brief filed by appointed appellate counsel satisfy the exhaustion requirement. *See Poland v. Stewart,* 117 F.3d 1094, 1105 (9th Cir. 1997) (fundamental error review does not constitute fair presentation); *Martinez-Villareal,* 80 F.3d at 1306 ("fundamental error review does not prevent subsequent procedural preclusion."). Petitioner is barred pursuant to Rule 32.2(a) of the Arizona Rules of Criminal Procedure from returning to state court nor has he shown cause or prejudice for the default. Thus, this Court may only consider Petitioner's claim that the jurors disregarded the instruction regarding sustained objections.

      b. Merits

It is well-settled that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is 'whether the ailing instruction...so infected the entire trial that the resulting conviction violates due process.'" *Middleton v. McNeil,* 541 U.S. 433, 437 (2004) (*quoting Estelle v. McGuire,* 502 U.S 62, 72 (1991)). If the charge as a whole is ambiguous, the court must inquire as to "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Id.* If so, then in order to grant habeas relief, the court must determine whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Ho v. Carey,* 332 F.3d 587, 595 (9th Cir. 2003) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)). This standard is met if the court has "grave doubt as to whether the error had such an effect." *Ho,* 332 F.3d at 595 (citation omitted).

At Petitioner's trial, the prosecution presented evidence that Detective Cahall was a certified computer voice stress analyst (hereinafter CVSA) and that certain verbal phrases can indicate

---

[15]To the extent that Petitioner's claim that the jurors disregarded the instruction that the state must prove each element beyond a reasonable doubt is considered as the same argument raised on appeal that the jurors rushed to judgment, this claim is moot in light of the fact that Petitioner has failed to establish that he is entitled to habeas relief based on insufficient evidence to support the convictions. *See* discussion *supra* at Section II.C.2.

the likelihood that a person is lying. (Amended Answer, Ex. M, p.19) Detective Cahall also

testified about Petitioner's use of such phrases. (Id.) On voir dire, defense counsel challenged

Detective Cahall's certification and the use of such testimony. The trial court sustained the

objection and struck Detective Cahall's testimony on that topic. (Amended Answer, Ex. M,

pp.18-20, Ex. N, p.10, 14) The record reflects the following exchange regarding a subsequent

question from the jury concerning the CVSA testimony:

> THE COURT: Another question: Would any of this computer voice analysis be used on a 911 call, or is this used in interviews at the Police Department? Is this used on phones?
>
> ***
>
> MR SEARS [defense counsel]: ...I object to this question about the computer voice analysis. There's no foundation from this witness to talk about that. We touched on that but I also think the answer is no, anyway. But I don't think it ought to be asked because there's no foundation that would support her answering it one way or the other.
>
> ***
>
> MS. POLK [prosecutor]: Are you gonna make a statement to the Jury that there's [sic] questions that were asked that, for certain reasons–
>
> MR. SEARS: He's already done that.
>
> THE COURT: Yeah. I'll just tell them I've determined that some of the questions asked do not seek admissible evidence, and I've determined not to ask 'em.
>
> ***
>
> THE COURT [in the presence of the jury]: [A]nd ladies and gentlemen, there were questions asked which sought, in my opinion, admission of, could involve admission of inadmissible matters, so I've determined not to ask some of the questions that were posed by the Jury.

(Amended Answer, pp. 19-21 quoting November 12, 1998 Transcript, pp. 221-225, 227)

Petitioner argues that if the jurors had heeded the instruction to disregard questions and

answers stricken upon sustained objections, they would never have inquired about CVSA

testimony. (Traverse, p.14) The record reflects, as the state appellate court pointed out, that

the trial court did not permit the witness to answer the question and the court also informed the

jury that he did not ask their questions that involved inadmissible evidence. Petitioner does

not point to additional juror questions regarding the CVSA testimony; nor does he cite other

instances where the jury indicated it was considering evidence that was inadmissible because such evidence had been stricken on objection.

Petitioner cites a newspaper article published after the trial that quotes one juror to the effect that reaching a verdict was difficult because "we didn't have any evidence as far as having anything in hand." (Amended Answer, Ex. M, attachment 2) This statement is not germane to the instant claim. One juror's recognition that the prosecution did not present physical evidence directly tying Petitioner to the crimes does not support the conclusion that when the jurors reached their verdict of guilty on eight of eleven counts, they relied on inadmissible evidence disregarding the court's instruction.

There being no showing that the jurors disregarded their instruction in such a way as to have a substantive and injurious effect on the verdicts, the state appellate court's decision was not contrary to, or an unreasonable application of, clearly established federal law. Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented.

####     5. Claim Five: Taped conversations

During Petitioner's trial, the prosecution introduced portions of surreptitiously taped conversations between Petitioner and his uncle, Gary Lewis. Petitioner argues here that introduction of the tapes violated his due process right to a fair trial for the following reasons: (1) portions of the conversations were missing or unintelligible; (2) the tapes did not contain any statements from Petitioner admitting to the crimes; and (3) Rules 404(b) and 801(d)(2) of the Rules of Evidence were violated. Petitioner specifically refers to a call he made to Jim Lewis in which Petitioner said in part: "Jim, get rid of everything you've got because this is what you (unintelligible) Rhonda...." (Petition, p. 9C)

At the state level, Petitioner argued that the tapes were of poor quality, they contained no admissions to the offenses at issue, and they impermissibly introduced evidence of other acts. To support his latter claim, Petitioner referred to his taped comment that "If I ever [s]teal again I'll make it worth it." (Amended Answer, Ex. M, p.34)

The Arizona Court of Appeals ruled:

> Tape-recorded conversations are admissible in the same manner as other evidence, as long as the admitted portions are not so substantially unintelligible so as to be untrustworthy. *State v. Dante,* 25 Ariz. App. 150, 154, 541 P.2d 941, 945 (1975) (overruled on other grounds by *State v. Hunter,* 136 Ariz. 45, 50, 664 P.2d 195, 200 (1983)). The portions that were admitted in evidence were not unintelligible, but are quite clear. Although the tapes do not contain an explicit confession by defendant that he committed the burglaries, the tapes do contain statements which are categorized as admissions by a party opponent. Such statements are admissible as non-hearsay pursuant to Rule 801(d)(2) of the Arizona Rules of Evidence. We find no abuse of discretion in the admission of the recordings.

(Amended Answer, Ex. N, p.16)  To the extent that Petitioner argues that the state appellate decision violated state and federal evidentiary rules, that claim is not cognizable on habeas review. *See McGuire,* 502 U.S. at 68; *United States v. Dowling,* 493 U.S. 342 (1990); *United States v. Augenblick,* 393 U.S. 348, 352 (1969); *Randolph v. People of the State of California,* 380 F.3d 1133, 1147 (9th Cir. 2004).

The federal court may, however, consider Petitioner's argument that the ruling deprived him of a fair trial guaranteed by due process. *Randolph,* 380 F.3d at 1147. Under such analysis, the court "must determine whether the admission of evidence rendered the trial so fundamentally unfair...that the...absence of...fairness fatally infected the trial; the acts complained of must be of such quality [that they] necessarily prevent[ed] a fair trial." *Id.* (internal quotation marks and citations omitted). *See also Dowling,* 493 U.S. at 352-355; *Kealohapauole v. Shimoda,* 800 F.2d 1463, 1465 (9th Cir. 1986).

The record reflects that the jury not only heard the tapes, but they also were presented with live testimony from both Petitioner and his uncle. Mr. Lewis' testified that Petitioner had admitted to burglarizing the Peacock residence. (Traverse, Ex. C) Mr. Lewis also testified that he had asked Petitioner not to steal anything from the Kools. (Id.)   Defense counsel specifically cross-examined Mr. Lewis about the tapes and challenged Mr. Lewis' credibility. (Traverse, Ex. G) Petitioner also presented testimony from Kim Roser to challenge Mr. Lewis' credibility. (Traverse, Ex. E)

Considering the testimony presented, "the jury in this case...remained free to assess the truthfulness and the significance" of the taped conversations and Petitioner had an opportunity to explain them as well. *Dowling,* 493 U.S. at 675 (no due process violation upon admission of evidence of other acts). Nor, given Mr. Lewis' testimony, did the tapes provide the jury with significantly more information than it learned from other evidence and testimony. *See Smith v. Pliler,* 278 F.Supp.2d 1060, 1068 (N.D. Cal. 2003) (denying habeas relief where the videotape at issue "did not provide the jury with significantly more information about petitioner or the circumstances of the crime tha[n] it learned from other evidence and testimony.") The fact that the jury did not find Petitioner guilty on all the counts pending at the close of trial also cuts against the conclusion that the admission of the tapes was so fundamentally unfair as to somehow fatally infect the trial. Hence, the state appellate court's is not contrary to, or an unreasonable application of, clearly established federal law. Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented.

## CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the District Court deny Respondents' Motion to Dismiss (Doc. No. 41 ) as moot and deny Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1).

Pursuant to 28 U.S.C. §636(B), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: CV 03-363-PCT-NVW.

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

/ / / /

/ / / /

- 31 -

The Clerk is directed to send a copy of this Report and Recommendation to the parties and/or their counsel.

DATED this 31st day of January, 2006.

_____
Héctor C. Estrada
United States Magistrate Judge